UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

WILLIAM R. TILYOU,

       Plaintiff,

  v.                                            23-CV-302-LJV
                                                      ORDER
STATE OF NEW YORK, *et al.*,

       Defendants.

---

      The *pro se* plaintiff, William R. Tilyou, is a prisoner confined at the Five Points Correctional Facility. He asserts claims under 42 U.S.C. § 1983; *Bivens v. Six Unknown Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971); and New York State law, alleging that during an arrest in Jamestown, New York, members of the Jamestown Police Department and the United States Marshals Service violated his rights under the Fourth and Fourteenth Amendments.[1] Docket Items 1 and 8.

      This Court previously granted Tilyou leave to proceed *in forma pauperis* and screened his complaint under 28 U.S.C. §§ 1915(e)(2)(B) and 1915A. Docket Item 6. It dismissed some of Tilyou's claims, allowed several others to proceed, and found that the remaining claims were subject to dismissal but gave Tilyou leave to amend those

---

[1] Tilyou also asserts an Eighth Amendment claim for "cruel [and] unusual punishment." Docket Item 8 at 12. The "protections of the Eighth Amendment only apply to a person who has been criminally convicted and sentenced; they do not apply to the conduct of police officers in connection with the . . . arrest of suspects prior to conviction and sentencing." *Spicer v. Burden*, 564 F. Supp. 3d 22, 31 (D. Conn. 2021) (citations omitted). Because this action arises from an arrest before Tilyou was convicted or sentenced, *see* Docket Item 8, his cruel and unusual punishment claim is dismissed without leave to amend.

claims.  *Id.*  Tilyou then filed an amended complaint, Docket Item 8, which the Court now screens under sections 1915(e)(2)(B) and 1915A.

For the reasons that follow, Tilyou's equal protection claim, along with the claims permitted to proceed in the first screening order, may proceed to service.  Tilyou's remaining claims are dismissed.

## DISCUSSION

Section 1915 "provide[s] an efficient means by which a court can screen for and dismiss legally insufficient claims."  *Abbas v. Dixon*, 480 F.3d 636, 639 (2d Cir. 2007) (citing *Shakur v. Selsky*, 391 F.3d 106, 112 (2d Cir. 2004)).  The court shall dismiss a complaint in a civil action in which a prisoner seeks redress from a governmental entity, or an officer or employee of a governmental entity, if the court determines that the complaint (1) fails to state a claim upon which relief may be granted or (2) seeks monetary relief against a defendant who is immune from such relief.  *See* 28 U.S.C. § 1915A(b)(1)-(2).

### I.   SCREENING THE COMPLAINT

In evaluating the complaint, the court accepts all factual allegations as true and draws all inferences in the plaintiff's favor.  *See Larkin v. Savage*, 318 F.3d 138, 139 (2d Cir. 2003) (per curiam); *King v. Simpson*, 189 F.3d 284, 287 (2d Cir. 1999).  Although "a court is obliged to construe [*pro se*] pleadings liberally, particularly when they allege civil rights violations," *McEachin v. McGuinnis*, 357 F.3d 197, 200 (2d Cir. 2004), even a *pro se* complaint "must plead 'enough facts to state a claim to relief that is plausible on its face,'" *Shibeshi v. City of New York*, 475 F. App'x 807, 808 (2d Cir. 2012) (summary

order) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim will have 'facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). In other words, although a *pro se* complaint need not provide every last detail in support of a claim, it must allege some facts that support the claim. *See id.* (concluding that district court properly dismissed *pro se* complaint under section 1915(e)(2) because complaint did not meet pleading standard in *Twombly* and *Iqbal*). And even *pro se* pleadings must meet the notice requirements of Rule 8 of the Federal Rules of Civil Procedure, *see Wynder v. McMahon*, 360 F.3d 73, 76 (2d Cir. 2004), and "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests," *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (alteration in original) (quoting *Twombly*, 550 U.S. at 555).

Tilyou sues five United States Deputy Marshals ("Marshals #1 - #5"),[2] three John Doe Jamestown Police Officers ("Jamestown Officers #1 - #3"), and the City of Jamestown in connection with an alleged assault during an arrest. Docket Item 8. The Court assumes familiarity with the facts as recounted in the first screening order, *see* Docket Item 6 at 3-6, and as re-alleged in the amended complaint, *see* Docket Item 8. The Court addresses the allegations new to the amended complaint in its analysis below.

In the first screening order, the Court determined that the following claims could proceed to service: (1) the inadequate medical care claims against the individual

---

[2] After the Court screened the original complaint, the United States Attorney's Office provided the names and addresses of Marshals #1 - #5. Docket Item 7.

defendants, (2) the unlawful search and seizure claims against the individual defendants, (3) the excessive force claim against Marshal #1 and Marshal #2, (4) the failure to intervene claim against Marshals #3 - #5 and Jamestown Officers #1 - #3, (5) the state law assault and battery claims against Marshal #1 and Marshal #2, and (6) the state law assault claim against Jamestown Officer #1.  Docket Item 6 at 22.  The Court informed Tilyou that the following claims would be dismissed unless he filed an amended complaint correcting the deficiencies noted in the screening order: (1) the *Monell* claims against the City of Jamestown, (2) the official-capacity claims against the Jamestown Officers, (3) the false arrest claims against the individual defendants, (4) the equal protection claims against the individual defendants, and (5) the claims against UPMC Hospital.[3]  *Id.* at 9-20.  The Court dismissed Tilyou's other claims.  *Id.* at 22.

## II.   SECTION 1983 AND *BIVENS* CLAIMS

"To state a valid claim under 42 U.S.C. § 1983, the plaintiff must allege that the challenged conduct (1) was attributable to a person acting under color of state law, and (2) deprived the plaintiff of a right, privilege, or immunity secured by the Constitution or laws of the United States."  *Whalen v. County of Fulton*, 126 F.3d 400, 405 (2d Cir. 1997) (citing *Eagleston v. Guido*, 41 F.3d 865, 875-76 (2d Cir. 1994)).  Similarly, "[a] plaintiff bringing a claim under *Bivens* must allege that he has been deprived of a

---

[3] The amended complaint does not name UPMC Hospital or re-assert claims against it, *see* Docket Item 8, even though the Court informed Tilyou that those claims were subject to dismissal, *see* Docket Item 6 at 10-11, 19-20.  The Court therefore concludes that Tilyou has abandoned his claims against UPMC Hospital, and those claims are dismissed.

constitutional right by a federal agent acting under color of federal authority." *Thomas v. Ashcroft*, 470 F.3d 491, 496 (2d Cir. 2006) (citing *Bivens*, 403 U.S. at 389).

### A.     *Monell* Claims Against the City of Jamestown

A municipality cannot be held liable under section 1983 unless the challenged action was undertaken pursuant to a municipal policy or custom.  *See Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 694 (1978).  To state such a claim, a plaintiff must plead three elements: "(1) an official policy or custom that (2) causes the plaintiff to be subjected to (3) a denial of a constitutional right."  *Zahra v. Town of Southold*, 48 F.3d 674, 685 (2d Cir. 1995) (quoting *Batista v. Rodriguez,* 702 F.2d 393, 397 (2d Cir. 1983)).  "[A] municipal policy may be inferred from the informal acts or omissions of supervisory municipal officials," such as "the persistent failure to discipline subordinates who violate [persons'] civil rights."  *Id.* (alteration in original) (second excerpt quoting *Batista*, 702 F.2d at 397).

Accordingly, in limited circumstances, a municipality may be held liable for failure to train, supervise, or discipline its employees.  *See Wray v. City of New York*, 490 F.3d 189, 195 (2d Cir. 2007); *Batista*, 702 F.2d at 397.  "Where plaintiffs seek to hold a municipality liable under a theory of failure to [train,] supervise[,] or discipline, . . . they must also show that the municipal policymaker acted with deliberate indifference."  *Pipitone v. City of New York*, 57 F. Supp. 3d 173, 191 (E.D.N.Y. 2014) (citing *City of Canton v. Harris*, 489 U.S. 378, 388-89 (1989)).

"Deliberate indifference is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action."  *Connick v. Thompson*, 563 U.S. 51, 61 (2011) (alteration, citation, and internal quotation marks

omitted). A plaintiff may show deliberate indifference in two ways. First, he may allege that:

> [1] a policymaker knows to a moral certainty that [municipal] employees will confront a particular situation; [2] the situation either presents the employee with a difficult choice of the sort that training or supervision will make less difficult or there is a history of employees mishandling the situation; and [3] the wrong choice by the [municipal] employee will frequently cause the deprivation of a citizen's constitutional rights.

*Wray*, 490 F.3d at 195-96 (citation and internal quotation marks omitted). Alternatively, "deliberate indifference may be inferred where the need for more or better supervision to protect against constitutional violations was obvious, but the policymaker failed to make meaningful efforts to address the risk of harm to [the] plaintiff[]." *Cash v. County of Erie*, 654 F.3d 324, 334 (2d Cir. 2011) (alteration, citations, and internal quotation marks omitted).

"While the Supreme Court has left open the possibility that a single incident could give rise to liability for failure to train or supervise, the Court has cautioned that only a 'narrow range' of circumstances would support such single-incident liability, where the 'unconstitutional consequences of failing to train were patently obvious.'" *Schnitter v. City of Rochester*, 931 F. Supp. 2d 469, 475 (W.D.N.Y. 2013) (quoting *Connick*, 563 U.S. at 63), *aff'd*, 556 F. App'x 5 (2d Cir. 2014) (summary order); *see Lucente v. County of Suffolk*, 980 F.3d 284, 306 (2d Cir. 2020) (noting that a policy of acquiescing in or ratifying illegal conduct "cannot be inferred from the failure of those in charge to discipline a single police officer for a single incident of illegality; instead, there must be more evidence of supervisory indifference, such as acquiescence in a prior pattern of conduct" (citation and internal quotation marks omitted)).

This Court previously determined that Tilyou's claims against the City of Jamestown were subject to dismissal because he failed to "allege that his constitutional rights were violated because of or pursuant to an official policy or custom of the City, as required by *Monell*." Docket Item 6 at 10.  But the Court nevertheless gave Tilyou leave to "amend his complaint to add specific allegations" to address that deficiency.  *Id.*

The amended complaint is peppered with allegations that the Jamestown Officers violated policies of the City of Jamestown.  *See, e.g.*, Docket Item 8 at 19 (alleging that the individual defendants "illegally searched [Tilyou's] home" and "refused" to "help" or "protect" him in violation of "a required policy [of] the City of Jamestown"); *id.* at 20 ("[E]very [d]efendant broke every policy or custom the City of Jamestown . . . has against protecting [and] serving.").  But allegations that Tilyou's rights were violated *despite* city policy does not show that Tilyou's rights were violated *because of* city policy.  Tilyou's allegations that the defendants "broke every policy [and] custom" of the City of Jamestown, *id.* at 21, therefore cannot establish *Monell* liability.

The amended complaint also advances a failure to train and discipline theory of *Monell* liability.  Docket Item 8 at 12; *see id.* at 16-17 (alleging, based on the Jamestown Officers' conduct, that the City of Jamestown "does not train [its] officers right").  But the allegations in the amended complaint do not state a viable *Monell* claim on that theory.

"To establish a 'failure to train' claim, a plaintiff must generally demonstrate that there has been a 'pattern of similar constitutional violations by untrained employees.'" *D'Alessandro v. City of New York*, 713 F. App'x 1, 10-11 (2d Cir. 2017) (summary order) (quoting *Connick*, 563 U.S. at 62)); *see Vann v. City of New York*, 72 F.3d 1040, 1049 (2d Cir. 1995) ("To prove . . . deliberate indifference, the plaintiff must show that the

7

need for more or better supervision . . . was obvious," such as through "proof of repeated complaints of civil rights violations[] . . . followed by no meaningful attempt on the part of the municipality to investigate or to forestall further incidents."). Here, Tilyou's allegations are solely about the alleged assault during his arrest. *See* Docket Item 8. He does not make any specific allegations suggesting a broad pattern of constitutional violations by Jamestown Police Officers that might demonstrate a failure to train or discipline. *See id.* And beyond detailing the circumstances of his alleged assault, Tilyou offers only vague and conclusory comments regarding the City of Jamestown's training of its officers. *See id.*

Moreover, Tilyou's claims do not fall within the "narrow range of circumstances" in which "a pattern of similar violations might not be necessary to show deliberate indifference." *See Connick*, 563 U.S. at 63. This is not a case where an officer's "utter lack of an ability to cope with constitutional situations" make it a "highly predictable consequence" that he would violate an individual's constitutional rights. *See id.* at 64, 67. Rather, Tilyou's claims arise in the particular circumstances of an alleged assault by United States Deputy Marshals with the assistance—or at least in the presence—of the Jamestown Officers.

Tilyou therefore has not alleged a viable *Monell* claim against the City of Jamestown, and his claims against the City are dismissed.

### B. Official-Capacity Claims Against the Jamestown Officers

Tilyou originally sued the Jamestown Officers in both their individual and official capacities. Docket Item 1 at 10. The Court previously found that the official-capacity claims against those defendants were subject to dismissal because Tilyou had not

8

alleged that his rights were violated due to an official policy or custom of the City of Jamestown.  Docket Item 6 at 10.  Tilyou's amended complaint names the Jamestown Officers only in their individual capacities.  See Docket Item 8 at 2, 15.  The Court therefore concludes that Tilyou has intentionally abandoned his official-capacity claims against the Jamestown Officers.  In any event, for the reasons explained above, Tilyou has not plausibly alleged a *Monell* claim, so his official-capacity claims against the Jamestown Officers are dismissed.

### C. False Arrest Claim

In its first screening order, this Court noted that the complaint "may raise a claim for false arrest."  Docket Item 6 at 14-15.  But because the complaint did not include details about the basis for Tilyou's arrest, the Court explained, it could not evaluate whether he was arrested without justification.  *Id.* (noting that probable cause "is a complete defense to an action for false arrest").  The Court then laid out what Tilyou must plead to raise a viable a false arrest claim.  *Id.*

The amended complaint does not include facts that might support a viable false arrest claim.  See Docket Item 8.  In fact, the amended complaint does not even list false arrest as a basis for Tilyou's claims*, id.* at 12, so Tilyou apparently has abandoned that claim.  In any event, Tilyou's false arrest claim is dismissed.

### D. Equal Protection Claim

This Court previously found that Tilyou's equal protection claim was subject to dismissal.  Docket Item 6 at 16-17.  More specifically, it noted that although Tilyou alleged that one of the Marshals made an offensive comment during the assault—"[K]eep crying p[***]y[,] by the time I'm done with your gay ass you'll beg me to kill

9

you"—Tilyou did not allege that the defendants targeted him because of his race, gender, or sexual orientation. *Id.*

Tilyou's amended complaint cures that deficiency: It includes allegations about the above comment, and it also alleges that Tilyou is "part of the LGBTQ+ community" and that he was targeted by the defendants for "being gay." Docket Item 8 at 19, 21 (some capitalization omitted). Tilyou's equal protection claim therefore may proceed to service against the individual defendants.

## **ORDER**

In light of the above, IT IS HEREBY

ORDERED that the following claims are dismissed: (1) all claims against the City of Jamestown; (2) the official-capacity claims against the Jamestown Officers; (3) the false arrest claim; (4) the claims against UPMC Hospital; and (5) the cruel and unusual punishment claim. The Clerk of the Court shall terminate the City of Jamestown and UPMC Hospital as defendants to this action; and it is further

ORDERED that the Clerk of the Court shall cause the United States Marshal to serve copies of the summons, the amended complaint, the first screening order, and this order upon defendants United States Deputy Marshals Daniel Higgins, Scott Baryza, Chul Lim, Christopher Weber, and Bruce Stenzel; and Jamestown Officers #1 - #3 (once identified), without Tilyou's payment therefor, unpaid fees to be recoverable if this action terminates by monetary award in Tilyou's favor; and it is further

ORDERED that, as directed in the first screening order, *see* Docket Item 6 at 21, the Jamestown Corporation Counsel shall provide the Court will the names and addresses of Jamestown Officers #1 - #3 or a written statement of reasons why such

identification is improper or impossible **within 35 days of the date of this order**; and it is further

ORDERED that the Jamestown Corporation Counsel's failure to comply with this order may result in sanctions under Rule 37 of the Federal Rules of Civil Procedure; and it is further

ORDERED that the Clerk of the Court shall forward a copy of this order and the amended complaint to the United States Marshals Service for the Western District of New York, Robert H. Jackson United States Courthouse, 2 Niagara Square, Buffalo, NY 14202, and Mary Pat Fleming, Assistant United States Attorney, mary.pat.fleming@usdoj.gov; and it is further

ORDERED that the Clerk of the Court shall forward a copy of this order, the original complaint, the first screening order, and the amended complaint to Elliot S. Raimondo, Corporation Counsel for the City of Jamestown, New York, by certified mail: Municipal Building, 200 East Third St, Jamestown NY 14701, and by email: counsel@jamestownny.gov; and it is further

ORDERED that once served, the defendants shall answer the complaint or respond under 42 U.S.C. § 1997e(g); and it is further

ORDERED that Tilyou shall notify the Court in writing if his address changes. The Court may dismiss the action if Tilyou fails to do so.

SO ORDERED.

Dated:     February 26, 2024
           Buffalo, New York


                                          _/s/ Lawrence J. Vilardo_
                                          LAWRENCE J. VILARDO
                                          UNITED STATES DISTRICT JUDGE